UNITES STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

F.M., a minor, by and through his mother Ms. M.,

                    Plaintiff,

v.                                            Case No. 1:13-CV-0041
                                              (GTS/RFT)
ANDERSON CTR. FOR AUTISM; and
TACONIC HILLS CENT. SCH. DIST.,

                    Defendants.
_____

APPEARANCES:                          OF COUNSEL:

SADOWSKI FISCHER PLLC                 ROBERT W. SADOWSKI, ESQ.
  Counsel for Plaintiff              RAPHAEL KATZ, ESQ.
39 Broadway, 15th Floor
New York, NY 10006

GIRVIN & FERLAZZO, P.C.               CHRISTOPHER P. LANGLOIS, ESQ.
  Counsel for Taconic Hills Cent. Sch. Dist.
20 Corporate Woods Boulevard
Albany, New York 12211

CARTER, CONBOY, CASE, BLACKMORE,      MICHAEL J. MURPHY, ESQ.
  MALONEY & LAIRD, P.C.               BROOKE D. YOUNGWIRTH, ESQ.
  Counsel for Anderson Ctr. for Autism
20 Corporate Woods Boulevard
Albany, NY 12211-2361

GLENN T. SUDDABY, United States District Judge

**DECISION and ORDER**

Currently before the Court, in this civil action filed by F.M., a minor by and through his

mother Ms. M ("Plaintiff") against the Anderson Center for Autism ("Defendant Anderson") and

the Taconic Hills Central School District ("Defendant Taconic Hills"), are Defendant

Anderson's motion to dismiss for failure to state a claim (Dkt. No. 15), and Defendant Taconic

Hills's motion to dismiss for failure to state a claim (Dkt. No. 17). For the reasons set forth below, Defendant Anderson's motion is granted, and Defendant Taconic Hills's motion is granted.

## I.     RELEVANT BACKGROUND

### A.     Plaintiff's Claims

Plaintiff filed his Complaint in this action on January 10, 2013. (Dkt. No. 1.) Generally, Plaintiff's Complaint alleges that, between approximately September of 2006 and March of 2010, Defendants discriminated against F.M. by (a) wrongfully denying him a free appropriate public education ("FAPE") through failing to properly implement the individualized educational program ("IEP") required to accommodate his autism spectrum disorder, (b) engaging in the abusive use of adverse physical interventions against him through "standing wraps," "basket-holds," and "takedowns," and (c) assaulting and battering him through wrongfully allowing members of the Anderson school staff to strike him. (*Id.*)[1]

Based on these allegations, Plaintiff asserts the following 13 claims against Defendants: (1) a claim that Defendants discriminated against F.M. based on his disabilities, in violation of Section 504 of the Rehabilitation Act of 1973 ("Rehabilitation Act"); (2) a claim that Defendants retaliated against F.M. for lodging complaints against them, in violation of the Rehabilitation Act; (3) a claim that Defendants discriminated against F.M. based on his disabilities, in violation of Title II of the Americans with Disabilities Act ("ADA"); (4) a claim that Defendants retaliated

_____

[1]     The Court notes that the last date referenced in Plaintiff's Complaint is "many months" after the appearance of a "scratch" on F.M.'s neck, which occurred on March 9, 2010. (Dkt. No. 1, at ¶¶ 66-67.) The Court notes also that Plaintiff acknowledges that "[t]he 2010-2011 school year IEP is not at issue in the instant case." (Dkt. No. 22, at 9 [attaching page "4" of Plf.'s Opp'n Memo. of Law].)

against F.M. for lodging complaints against him, in violation of ADA; (5) a claim that

Defendants subjected F.M. to a hostile learning environment under the Rehabilitation Act; (6)  a

claim that Defendants subjected F.M. to a hostile learning environment under the ADA; (7) a

claim that Defendants discriminated against F.M. based on his disabilities, in violation of Section

296 of the New York Executive Law; (8) a claim that Defendants acted negligently, recklessly

and/or with deliberate indifference toward Plaintiff, in violation of New York State common

law; (9) a claim that Defendants breached a contract with Plaintiff, in violation of New York

State common law; (10) a claim that Defendants subjected Plaintiff to the intentional infliction of

emotional distress, in violation of New York State common law; (11) a claim that Defendants

assaulted and battered Plaintiff, in violation of New York State common law; (12) a claim that

Defendants denied Plaintiff a FAPE by failing to comply with the mandates of his IEP, in

violation of the Individuals with Disabilites Education Act ("IDEA"); and (13) a claim that

Defendants violated F.M.'s right to due process under the United States Constitution.  (*Id*.)

Familiarity with these claims, and the factual allegations supporting them, is assumed in

this Decision and Order, which is intended primarily for review by the parties. (*Id.*)

> **B.** **Parties' Briefing on Defendant Anderson's Motion**

> **1.** **Defendant Anderson's Memorandum of Law**

Generally, in support of its motion, Defendant Anderson asserts three arguments.   (Dkt.

No. 15, Attach. 2 [Def. Anderson's Memo. of Law].)

First, Defendant Anderson argues, Plaintiff's claims under the Rehabilitation Act, ADA

and IDEA are barred by the applicable statute of limitations, because (a) his claims accrued

when he withdrew from the Anderson Center (due to Defendant Anderson's failure to provide

him with a suitable education, and the fact that he had come home with bruises) on or about May 6, 2009, (b) the two-year statute of limitations for exhausted claims expired on or about May 6, 2011, and the three-year statute of limitations for unexhausted claims expired on or about May 4, 2012, and (c) he did not file the Complaint in this action until January 10, 2013. (*Id*. at 5-7 [attaching pages "2" through "4" of Def. Anderson's Memo. of Law].)

Second, Defendant Anderson argues, Plaintiff has failed to state a retaliation claim under either the Rehabilitation Act or the ADA, because he has failed allege facts plausibly suggesting that (a) he engaged in protected activity and (b) any adverse decision or course of action was taken against him. (*Id*. at 7-8 [attaching pages "4" and "5" of Def. Anderson's Memo. of Law].)

Third, Defendant Anderson argues, Plaintiff has failed to state a substantive or procedural due process claim under the Fourteenth Amendment, because he has failed to allege facts plausibly suggesting that (a) Defendant Anderson is a governmental entity due to its receipt of federal funding, (b) possesses a protected property interest in his education, and (c) Defendant Anderson's acts were so outrageously arbitrary as to be a gross abuse of governmental authority. (*Id*. at 8-10 [attaching pages "5" through "7" of Def. Anderson's Memo. of Law].)

### 2.    Plaintiff's Opposition Memorandum of Law

Generally, in opposition to Defendant Anderson's motion, Plaintiff asserts three arguments. (Dkt. No. 23 [Plf.'s Opp'n Memo. of Law].)

First, Plaintiff argues, as he explains in another opposition memorandum of law, his federal claims are not barred by the applicable statute of limitations because (a) the earliest date on which he knew or could have known of the misconduct alleged (i.e., the failure to implement the Consent Decree and IEPs) was March 10, 2010, (b) in any event, to the extent any claims

were based on events occurring on or after January 9, 2009, those claims are timely, (c) his ADA claim survives the statute of limitations due to infancy status and the tolling provision of N.Y. C.P.L.R. § 208. (*Id.* at 6-8 [attaching pages "3" through "5" of Plf.'s Opp'n Memo. of Law].)

Second, Plaintiff argues, he has stated a claim for retaliation under the ADA and Rehabilitation Act, because he has alleged facts plausibly suggesting both that (a) Plaintiff engaged in protected activity through "lodging complaints" and (b) he experienced an adverse decision or course of action through a delayed response and investigation to those complaints. (*Id.* at 8-9 [attaching pages "5" and "6" of Plf.'s Opp'n Memo. of Law].)

Third, argues Plaintiff, he has stated a procedural due process claim under the Fourteenth Amendment, because he has alleged facts plausibly suggesting that (a) Defendant Anderson is a state actor not simply due to its receipt of federal funding but also due to its implementation of an IEP in conjunction with the New York Committee on Special Education, and (b) Plaintiff possesses a protected property interest in a statutorily imposed free education. (*Id.* at 9-12 [attaching pages "6" through "9" of Plf.'s Opp'n Memo. of Law].)

### 3. Defendant Anderson's Reply Memorandum of Law

Generally, in reply to Plaintiff's response, Defendant Anderson asserts four arguments. (Dkt. No. 24, Attach. 4 [Def. Anderson's Reply Memo. of Law].)

First, Defendant Anderson argues, the Court should reject Plaintiff's statute-of-limitations arguments, because (a) he has improperly attempted to incorporate those arguments by reference from another memorandum of law, (b) the Consent Decree and due process hearing have no bearing on the date on which Plaintiff's action against Defendant Anderson accrued (in that they are not alleged in the Complaint, and Defendant Anderson did not participate in them),

(c) the four-year statute of limitations set forth in 28 U.S.C. § 1658 (which is referenced Plaintiff's other memorandum of law) is inapplicable to Plaintiff's ADA claim and other claims, and (d) Plaintiff's ADA claims are not tolled by his infancy status, because (i) such tolling would defeat the purpose of the ADA (which is similar to the purposes of the Rehabilitation Act and the IDEA), and (ii) through the filing of this action Plaintiff has demonstrated an ability to pursue his rights during the relevant period (and he has not alleged facts plausibly suggesting an inability to pursue his rights during the relevant period). (*Id*. at 3-8 [attaching pages "1" through "6" of Def. Anderson's Reply Memo. of Law].)

Second, Defendant Anderson argues, the Court should reject Plaintiff's arguments regarding his retaliation claim, because (a) while he alleges that he lodged complaints with various entities, he does not allege facts plausibly suggesting that he sought a reasonable accommodation for his disability or even that he sought such relief from Defendant Anderson rather than some other entity such as Defendant Taconic Hills, and (b) he does not allege facts plausibly suggesting that Defendant Anderson took adverse action against him as a result of any complaints with Defendant Anderson, or that Defendant Anderson even knew of his complaints to other entities. (*Id*. at 8-9 [attaching pages "6" and "7" of Def. Anderson's Reply Memo. of Law].)

Third, Defendant Anderson argues, the Court should reject Plaintiff's state-actor argument (in support of his Fourteenth Amendment claim), because (a) the Complaint alleges that the New York State Committee on Special Education prescribed the IEP before Plaintiff attended the Anderson Center and without Defendant Anderson's input, and (b) the Complaint fails to allege that the government is entwined with Defendant Anderson's management or

control or that the school district (or any other governmental entity) had any interest in personnel decisions at the Anderson Center. (*Id*. at 9-11 [attaching pages "7" through "9" of Def. Anderson's Reply Memo. of Law].)

Fourth, Defendant Anderson argues, the Court should reject Plaintiff's Fourteenth Amendment argument, because the Second Circuit has explained that the Fourteenth Amendment does not protect a parent's ability to create his or her child's behavioral support plan as a substantive fundamental right or protect the child's right to a free private education. (*Id*. at 11-12 [attaching pages "9" and "10" of Def. Anderson's Reply Memo. of Law].)

### C. Parties' Briefing on Defendant Taconic Hills' Motion

#### 1. Defendant Taconic Hills' Memorandum of Law

Generally, in support of its motion, Defendant Taconic Hills asserts five arguments. (Dkt. No. 17, Attach. 1 [Def. Taconic Hills' Memo. of Law].)

First, Defendant Taconic Hills argues, Plaintiff's claims under the Rehabilitation Act, the ADA and the IDEA should be dismissed because (a) all such claims barred by the applicable statute of limitations in that they are based on events occurring before January 10, 2010 (and the infancy tolling provision of N.Y. C.P.L.R. § 208 does not apply), (b) in any event, those claims arising under the Rehabilitation Act or IDEA and based on events occurring before the date of service of Plaintiff's "Demand for a Due Process Hearing" on July 2, 2009, are barred by the terms of the Consent Decree entered into by the parties on September 29, 2009, and "So Ordered" by an Impartial Hearing Officer ("IHO") on October 8, 2009 (which resolved all claims leading up to that demand), and (c) all such claims based on events occurring between January 10, 2010, and June 30, 2010, are barred by the doctrines of collateral estoppel and/or *res*

*judicata*, due to an IHO's decision of January 31, 2011, and an State Review Officer's ("SRO") decision of April 29, 2011, which were never "[]appealed" to federal court, because those decisions preclude a claim of a denial of a FAPE during the above-referenced period, or a claim of either discriminatory or retaliatory intent. (*Id.* at 9-18 [attaching pages "4" through "13" of Def. Taconic Hills' Memo. of Law].)

Second, Defendant Taconic Hills argues, Plaintiff's due process claim should be dismissed because of the failure to allege facts plausibly suggesting (a) that the alleged denial of his right to due process was the result of an act of an employee of Defendant Taconic Hills (as opposed to an employee of Defendant Anderson), or (b) that any act attributable to Defendant Taconic Hills was taken pursuant to an expressly adopted policy of Defendant Taconic Hills, pursuant to a longstanding policy or custom of Defendant Taconic Hills, or by an employee of Defendant Taconic Hills acting as a final policymaker, as required to establish municipal liability under *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978). (*Id.* at 19-20 [attaching pages "14" and "15" of Def. Taconic Hills' Memo. of Law].)

Third, Defendant Taconic Hills argues, Plaintiff's state law tort claims should be dismissed because of the failure to allege facts plausibly suggesting any cognizable duty of care owed to Plaintiff by Defendant Taconic Hills, any intentionally harmful act by Defendant Taconic Hills against Plaintiff, and/or any vicarious liability on behalf of Defendant Taconic Hills. (*Id.* at 21-23 [attaching pages "16" through "18" of Def. Taconic Hills' Memo. of Law].)

Fourth, Defendant Taconic Hills argues, Plaintiff's claim under New York Executive Law § 296 should be dismissed because of Plaintiff's failure to allege facts plausibly suggesting that either Section 296(2) nor Section 296(4) applies to Defendant Taconic Hills under the

circumstances.  (*Id*. at 23-24 [attaching pages "18" and "19" of Def. Taconic Hills' Memo. of Law].)

Fifth, Defendant Taconic Hills argues, Plaintiff's breach-of-contract claims should be dismissed because of the failure to allege facts plausibly suggesting that F.M.'s IEP was a legally binding contract.  (*Id*. at 24-25 [attaching pages "19" and "20" of Def. Taconic Hills' Memo. of Law].)

### 2.      Plaintiff's Opposition Memorandum of Law

Generally, in response to Defendant Taconic Hills's motion, Plaintiff asserts six arguments.  (Dkt. No. 22 [Plf.'s Opp'n Memo. of Law].)

First, Plaintiff argues, the statute of limitations does not bar all of Plaintiff's claims based on events occurring before January 10, 2010, because (a) the statutes of limitations governing the federal claims had not expired by the time of the filing of the Complaint (in that the four-year statute of limitations of 28 U.S.C. § 1658 governs his ADA claims, the three-year statute of limitations governing his IDEA and Rehabilitation Act claims started running at the earliest on March 10, 2010, and in any event an exception to the statute of limitations applies where a school district has made specific misrepresentations that it had resolved the problem forming the basis of the complaint), (b) the statute of limitations on the ADA claims based on events occurring before January 10, 2010, had not yet expired (in that he did not know that Defendant Taconic Hills would violate the Consent Decree until he came home with a scratch on his neck on or shortly after March 9, 2010), (c) the statute of limitations on his ADA claim is tolled based on his infancy status under N.Y. C.P.L.R. § 208, and (d) the statute of limitations on his state law claims is tolled based on his infancy status.  (*Id*. at 11-18 [attaching pages "6" through "13" of Plf.'s Opp'n Memo. of Law].)

Second, Plaintiff argues, Defendant Taconic Hills is not entitled to dismissal based on the Consent Decree because (a) the Consent Decree resolved all the issues in Plaintiff's due process hearing request of July 2, 2009, only so long as Defendant Taconic Hills implemented the terms of the Consent Decree, and (b) Defendant Taconic Hills failed to implement several of those terms. (*Id.* at 18-19 [attaching pages "13" and "14" of Plf.'s Opp'n Memo. of Law].)

Third, Plaintiff argues, the doctrines of collateral estoppel and *res judicata* do not apply, because (a) 20 U.S.C. § 1414(i)(2)(A) permits a party aggrieved by decision by an IHO and SRO to bring a civil action in federal court, (b) when a party seeks relief in federal court from an administrative decision, there has been no final adjudication or judgment of the underlying issue or claim on the merits for purposes of collateral estoppel and *res judicata*, and (c) at most, courts must defer to the reasoned conclusions of the SRO as the final state administrative determination (and they need not even do that when the SRO reaches different conclusions than does the IHO). (*Id.* at 19-22 [attaching pages "14" through "17" of Plf.'s Opp'n Memo. of Law].)

Fourth, Plaintiff argues, he has stated a due process claim, because (a) a policy, custom or practice of a municipal entity may be inferred where the municipality has so failed to train its employees as to display a deliberate indifference to the constitutional rights of those within its jurisdiction, and (b) here, Plaintiff has alleged such a failure to train by alleging that both an employee (or employees) of Defendant Anderson and an employee of Defendant Taconic Hills violated the Consent Decree (by engaging in wrongful aversive intervention). (*Id.* at 22-23 [attaching pages "17" and "18" of Plf.'s Opp'n Memo. of Law].)

Fifth, Plaintiff argues, he has made out state-law tort claims, because he has alleged facts plausibly suggesting claims for negligence, intentional infliction of emotional distress, assault, battery and breach of contract, and that Defendant Taconic Hills supervised Defendant Anderson. (*Id.* at 23-27 [attaching pages "18" through "22" of Plf.'s Opp'n Memo. of Law].)

### 3. Defendant Taconic Hills Reply Memorandum of Law

Generally, in reply to Plaintiff's response, Defendant Taconic Hills asserts seven arguments. (Dkt. No. 28 [Def. Taconic Hills Reply Memo. of Law].)

First, argues Defendant Taconic Hills, the four-year statute of limitations set forth in 28 U.S.C. § 1658 does not apply to Plaintiff's ADA claim, Rehabilitation Act claim and IDEA claim, because (a) that statute applies only to a civil action arising under an Act of Congress enacted after December 1, 1990, and (b) the 2008 amendments to the ADA relied on by him did not make his claim possible (by creating a new right and liability). (*Id.* at 4-6 [attaching pages "1" through "3" of Def. Taconic Hills' Reply Memo. of Law].)

Second, argues Defendant Taconic Hills, the infancy tolling provision of N.Y. C.P.L.R. § 208 does not apply to his ADA claim, because he offers no compelling argument why, under the reasoning of *Piazza v. Florida Union Free Sch. Dist.*, 777 F. Supp.2d 669 (S.D.N.Y. 2011), that provision should not be equally inapplicable to his ADA claims. (*Id.* at 6 [attaching page "3" of Def. Taconic Hills' Reply Memo. of Law].)

Third, argues Defendant Taconic Hills, Plaintiffs claims arising from his attendance at the Anderson Center accrued no later than July 2, 2009, because (a) he clearly knew (or had reason to know) of his claim on that date (when he filed his request for a due process hearing), and (b) the subsequent events (in September 2009 and March 2010) do not serve as grounds to equitably toll the limitations period or estop Defendant Taconic Hills from relying on it, nor would any tolling (from the date of the Consent Decree to the date of discovery of bruises on F.M.) even render the Complaint timely. (*Id.* at 6-8 [attaching pages "3" through "5" of Def. Taconic Hills' Reply Memo. of Law].)

Fourth, argues Defendant Taconic Hills, in any event, the Consent Decree serves as an alternative basis for dismissal, because, contrary to Plaintiff's argument, Defendant Taconic Hills complied with the Consent Decree by developing an IEP as required, and a single instance of failing to provide subsequent notice of using a physical restraint does not rise to the level of a material breach of the Consent Decree. (*Id*. at 8-9 [attaching pages "5" and "6" of Def. Taconic Hills' Reply Memo. of Law].)

Fifth, argues Defendant Taconic Hills, the doctrines of *res judicata* and/or collateral estoppel apply because, contrary to Plaintiff's argument, the SRO's decision of April 29, 2011, was "final" in that neither party filed a timely challenge to it in federal court, i.e., within four months, as required by 20 U.S.C. § 1415(i)(2) and N.Y. Educ. Law § 4404(3). (*Id*. at 9-10 [attaching pages "6" and "7" of Def. Taconic Hills' Reply Memo. of Law].)[2]

Sixth, argues Defendant Taconic Hills, Plaintiff's due process claim fails because his Complaint fails to allege facts plausibly suggesting that (a) Consent-Decree violations that occurred while F.M. was at Anderson were caused by acts or omissions by an employee of Defendant Taconic Hills (as opposed to an employee of Defendant Anderson), and (b) the sole Consent-Decree violation that occurred after F.M. was an Anderson (i.e., a "scratch" on his neck, appearing on March 10, 2010) resulted from any specific act or omission of an employee of Defendant Taconic Hills, amounted to a deprivation of Plaintiff's due process rights, or resulted from a failure to train so egregious as to constitute a deliberate indifference to Plaintiff's constitutional rights. (*Id*. at 10-11 [attaching pages "7" and "8" of Def. Taconic Hills' Reply Memo. of Law].)

---

[2] Defendant Taconic Hills also argues that, because the 2010-2011 school year I.E.P. is not at issue in this case, the Court need not consider the preclusive effect of the IHO's decision of July 5, 2011, and SRO's decision of September 12, 2011.

Seventh, argues Defendant Taconic Hills, Plaintiff's state law claims fails because his Complaint fails to allege facts plausibly suggesting claims for negligence, intentional acts, or breach of contract, and he does not dispute that his New York Executive Law § 296 claim against Defendant Taconic Hills should be dismissed. (*Id.* at 11-12 [attaching pages "8" and "9" of Def. Taconic Hills' Reply Memo. of Law].)

## II.    RELEVANT LEGAL STANDARD

It has long been understood that a defendant may base a motion to dismiss for failure to state a claim upon which relief can be granted on either or both of two grounds: (1) a challenge to the "sufficiency of the pleading" under Fed. R. Civ. P. 8(a)(2); or (2) a challenge to the legal cognizability of the claim. *Jackson v. Onondaga County*, 549 F. Supp.2d 204, 211, nn. 15-16 (N.D.N.Y. 2008) (McAvoy, J., adopting Report-Recommendation on *de novo* review).

Because such motions are often based on the first ground, some elaboration on that ground is appropriate. Rule 8(a)(2) of the Federal Rules of Civil Procedure requires that a pleading contain "a *short and plain* statement of the claim *showing* that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2) [emphasis added]. In the Court's view, this tension between permitting a "short and plain statement" and requiring that the statement "show[]" an entitlement to relief is often at the heart of misunderstandings that occur regarding the pleading standard established by Fed. R. Civ. P. 8(a)(2).

On the one hand, the Supreme Court has long characterized the "short and plain" pleading standard under Fed. R. Civ. P. 8(a)(2) as "simplified" and "liberal." *Jackson*, 549 F. Supp.2d at 212, n.20 (citing Supreme Court case). On the other hand, the Supreme Court has held that, by requiring the above-described "showing," the pleading standard under Fed. R. Civ.

13

P. 8(a)(2) requires that the pleading contain a statement that "give[s] the defendant *fair notice* of what the plaintiff's claim is and the grounds upon which it rests." *Jackson*, 549 F. Supp.2d at 212, n.17 (citing Supreme Court cases) (emphasis added).

The Supreme Court has explained that such *fair notice* has the important purpose of "enabl[ing] the adverse party to answer and prepare for trial" and "facilitat[ing] a proper decision on the merits" by the court. *Jackson*, 549 F. Supp.2d at 212, n.18 (citing Supreme Court cases); *Rusyniak v. Gensini,* 629 F. Supp.2d 203, 213 & n.32 (N.D.N.Y. 2009) (Suddaby, J.) (citing Second Circuit cases). For this reason, as one commentator has correctly observed, the "liberal" notice pleading standard "has its limits." 2 *Moore's Federal Practice* § 12.34[1][b] at 12-61 (3d ed. 2003). For example, numerous Supreme Court and Second Circuit decisions exist holding that a pleading has failed to meet the "liberal" notice pleading standard. *Rusyniak,* 629 F. Supp.2d at 213, n.22 (citing Supreme Court and Second Circuit cases); *see also Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-52 (2009).

Most notably, in *Bell Atlantic Corp. v. Twombly*, the Supreme Court reversed an appellate decision holding that a complaint had stated an actionable antitrust claim under 15 U.S.C. § 1. *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955 (2007). In doing so, the Court "retire[d]" the famous statement by the Court in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Twombly*, 127 S. Ct. at 1968-69. Rather than turning on the *conceivability* of an actionable claim, the Court clarified, the "fair notice" standard turns on the *plausibility* of an actionable claim. *Id*. at 1965-74. The Court explained that, while this does not mean that a

pleading need "set out in detail the facts upon which [the claim is based]," it does mean that the pleading must contain at least "some factual allegation[s]." *Id*. at 1965. More specifically, the "[f]actual allegations must be enough to raise a right to relief above the speculative level [to a plausible level]," assuming (of course) that all the allegations in the complaint are true. *Id*.[3]

As for the nature of what is "plausible," the Supreme Court explained that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). "[D]etermining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. . . . [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not show[n]–that the pleader is entitled to relief." *Iqbal*, 129 S.Ct. at 1950 [internal quotation marks and citations omitted]. However, while the plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully," *id*., it "does not impose a probability requirement." *Twombly*, 550 U.S. at 556.

---

[3]     It should be emphasized that Fed. R. Civ. P. 8's plausibility standard, explained in *Twombly*, was in no way retracted or diminished by the Supreme Court's decision (two weeks later) in *Erickson v. Pardus*, in which (when reviewing a *pro se* pleading) the Court stated, "*Specific* facts are not necessary" to successfully state a claim under Fed. R. Civ. P. 8(a)(2). *Erickson v. Pardus*, 127 S. Ct. 2197, 2200 (2007) [emphasis added]. That statement was merely an abbreviation of the often-repeated point of law–first offered in *Conley* and repeated in *Twombly*–that a pleading need not "set out *in detail* the facts upon which [the claim is based]" in order to successfully state a claim. *Twombly*, 127 S. Ct. 1965, n.3 (citing *Conley*, 355 U.S. at 47) [emphasis added]. That statement did not mean that all pleadings may achieve the requirement of "fair notice" without ever alleging any facts whatsoever. Clearly, there must still be enough fact set out (however set out, whether in detail or in a generalized fashion) to raise a right to relief above the speculative level to a plausible level. *See Rusyniak*, 629 F. Supp.2d at 214 & n.35 (explaining holding in *Erickson*).

Because of this requirement of factual allegations plausibly suggesting an entitlement to relief, "the tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by merely conclusory statements, do not suffice." *Iqbal*, 129 S. Ct. at 1949. Similarly, a pleading that only "tenders naked assertions devoid of further factual enhancement" will not suffice. *Iqbal*, 129 S.Ct. at 1949 (internal citations and alterations omitted). Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.*

Under the circumstances, a few words are appropriate regarding what documents are considered when a dismissal for failure to state a claim is contemplated. Generally, when contemplating a dismissal pursuant to Fed. R. Civ. P. 12(b)(6) or Fed. R. Civ. P. 12(c), the following matters outside the four corners of the complaint may be considered without triggering the standard governing a motion for summary judgment: (1) documents attached as an exhibit to the complaint or answer, (2) documents incorporated by reference in the complaint (and provided by the parties), (3) documents that, although not incorporated by reference, are "integral" to the complaint, or (4) any matter of which the court can take judicial notice for the factual background of the case.[4] With regard to the fourth type of matters, such documents

---

[4] *See* Fed. R. Civ. P. 10(c) ("A copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes."); *L-7 Designs, Inc. v. Old Navy, LLC*, No. 10-573, 2011 WL 2135734, at *1 (2d Cir. June 1, 2011) (explaining that conversion from a motion to dismiss for failure to state a claim to a motion for summary judgment is not necessary under Fed. R. Civ. P. 12[d] if the "matters outside the pleadings" in consist of [1] documents attached to the complaint or answer, [2] documents incorporated by reference in the complaint (and provided by the parties), [3] documents that, although not incorporated by reference, are "integral" to the complaint, or [4] any matter of which the court can take judicial notice for the factual background of the case); *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) (explaining that a district court considering a dismissal pursuant to Fed. R. Civ. 12(b)(6) "may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint. . . . Where a document is

include those that appear in a court's own records of prior litigation between the parties. *See, e.g., Coleman v. B.G. Suizie, Inc.*, 402 F.Supp.2d 403, 417-418 (N.D.N.Y. 2005) (McCurn, J.) ("A court considering a *res judicata* defense may judicially notice prior pleadings, orders, judgment, and other items appearing in the court records of prior litigation that are related to the case before it.") (internal ellipses and quotation marks omitted).

In addition, it bears noting that, "[w]here the dates in a complaint show that an action is barred by a statute of limitations, a defendant may raise the affirmative defense in a pre-answer motion to dismiss . . . for failure to state a claim upon which relief can be granted . . . ." *Ghartey v. St. John's Queens Hosp.*, 869 F.2d 160, 162 (2d Cir.1989). Similarly, "[t]hough *res judicata* is usually plead in an answer, a Rule 12(b)(6) dismissal on the basis of the doctrine is appropriate when it is clear, from the complaint and from matters of which the court takes judicial notice, that plaintiff's claims are barred as a matter of law." *Houbigant, Inc. v. Dev. Specialists, Inc.*, 229 F. Supp.2d 208, 220 (S.D.N.Y. 2002).

Finally, it bears noting that, in this District, when a non-movant fails to oppose a legal argument asserted by a movant in support of a motion, the movant's burden with regard to that

---

not incorporated by reference, the court may neverless consider it where the complaint relies heavily upon its terms and effect, thereby rendering the document 'integral' to the complaint. . . . However, even if a document is 'integral' to the complaint, it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document. It must also be clear that there exist no material disputed issues of fact regarding the relevance of the document.") [internal quotation marks and citations omitted]; *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2009) ("The complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference.") (internal quotation marks and citations omitted); *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir.1995) (per curiam) ("[W]hen a plaintiff chooses not to attach to the complaint or incorporate by reference a [document] upon which it solely relies and which is integral to the complaint," the court may nevertheless take the document into consideration in deciding [a] defendant's motion to dismiss, without converting the proceeding to one for summary judgment.") (internal quotation marks and citation omitted).

argument has been lightened such that, in order to succeed on that argument, the movant need only show that the argument possesses facial merit, which has appropriately been characterized as a "modest" burden. *See* N.D.N.Y. L.R. 7.1(b) (3) ("Where a properly filed motion is unopposed and the Court determines that the moving party has met its burden to demonstrate entitlement to the relief requested therein . . . ."); *Rusyniak v. Gensini*, 07-CV-0279, 2009 WL 3672105, at *1, n.1 (N.D.N.Y. Oct. 30, 2009) (Suddaby, J.) (collecting cases); *Este-Green v. Astrue*, 09-CV-0722, 2009 WL 2473509, at *2 & n.3 (N.D.N.Y.Aug.7, 2009) (Suddaby, J.) (collecting cases).

## III.    ANALYSIS

### A.    Defendant Anderson's Motion to Dismiss

As indicated above in Part I.A. of this Decision and Order, Plaintiff has asserted eight federal claims against Defendant Anderson: (1) a claim that Defendant Anderson discriminated against F.M. based on his disabilities, in violation of the Rehabilitation Act; (2) a claim that Defendant Anderson retaliated against F.M. for lodging complaints against them, in violation of the Rehabilitation Act; (3) a claim that Defendant Anderson discriminated against F.M. based on his disabilities, in violation of the ADA; (4) a claim that Defendant Anderson retaliated against F.M. for lodging complaints against him, in violation of ADA; (5) a claim that Defendant Anderson subjected F.M. to a hostile learning environment under the Rehabilitation Act; (6)  a claim that Defendant Anderson subjected F.M. to a hostile learning environment under the ADA; (7) a claim that Defendant Anderson denied Plaintiff a FAPE by failing to comply with the mandates of his IEP, in violation of the IDEA; and (8) a claim that Defendant Anderson violated F.M.'s right to due process under the Fourteenth Amendment.

As indicated above in Part I.B. of this Decision and Order, Defendant Anderson's motion presents three general issues with regard to those eight federal claims: (1) whether Plaintiff's claims against Defendant Anderson arising under the Rehabilitation Act, ADA and IDEA are barred by the applicable statute of limitations; (2) whether, in the alternative, Plaintiff has failed to state a retaliation claim against Defendant Anderson arising under either the Rehabilitation Act or the ADA; and (3) whether Plaintiff has failed to state a substantive or procedural due process claim against Defendant Anderson.

> **1.     Whether Plaintiff's Claims Against Anderson Arising Under the Rehabilitation Act, ADA and IDEA Are Barred by the Applicable Statute of Limitations**

After carefully considering the matter, the Court answers this question in the affirmative, for all the reasons offered in Defendant Anderson's memoranda of law. *See, supra,* Parts I.B.1. and I.B.3. of this Decision and Order.  The Court adds only the following analysis.

With regard to Plaintiff's claims based on events occurring before May 6, 2009, the Court finds that it is immaterial when the applicable limitations period started running.  The Court would find these claims untimely whether the period started running on the date on which F.M.'s mother withdrew him from Anderson (i.e., May 6, 2009), the date on which Plaintiff filed a due process hearing request (i.e., July 2, 2009), the date on which the IHO approved of a Consent Decree entered into between Plaintiff and Taconic Hills Central School District (i.e., September 29, 2009), the date on which the IHO "So Ordered" that Consent Decree (i.e., October 8, 2009), or even the apparent date of the expiration Plaintiff's deadline to file an administrative appeal from that order (i.e., November 12, 2009).[5]  Even if the limitations period

---

[5]     *See M.M. ex rel. J.M. v. New York City Dept. of Educ.*, 09-CV-5236, 2010 WL 2985477, at *4 (S.D.N.Y. July 27, 2010) ("As required, see N.Y. Comp.Codes R. & Regs. tit. 8,

started running on this last date, the applicable limitations period would have been two years, because the claims were never exhausted. The claims (i.e., the claims based on events occurring before May 6, 2009) were never exhausted because Plaintiff's second due process hearing request (dated April 22, 2010) was expressly based on events occurring on February 5, 2010, February 9, 2010, March 9, 2010, March 19, 2010, and March 22, 2010. (Dkt. No. 17, Attach. 8, at 3-5.)[6] Furthermore, the IHO's decision of January 31, 2011, addressed the District's liability for only "the absence of FAPE" starting on January 28, 2010. (Dkt. No. 17, Attach. 9, at 73 [Amended Findings of Fact].) Even if the limitations period was three years, it would have expired 59 days before Plaintiff filed his Complaint in this action.

With regard to Plaintiff's claims based on events starting in or around January of 2010 (including the "scratch" on his neck appearing on March 9, 2010), the Court reaches a different conclusion. Specifically, with regard to those claims, the Court finds that, because Plaintiff exhausted his administrative remedies regarding those claims (resulting in an IHO's decision on January 31, 2011, and an SRO's decision on April 29, 2011), a two-year statute of limitations governs those claims. However, the Court does not construe the Complaint as asserting those particular claims against Defendant Anderson, because F.M.'s parents withdrew him from Anderson following an incident on May 6, 2009. (Dkt. No. 1, at ¶ 64 [Plf.'s Compl.].)

---

§ 200.5(j)(5)(v), a notice of Plaintiffs' right to appeal to the SRO within 35 days is attached to IHO Mora's decision.").

[6] Were the Court to ignore the differences in the two due process hearing requests, the Court would permit a plaintiff to evade the statute of limitations simply by filing a second due process hearing request and arguing that the second request "continued" or "re-raised" the issues that were raised in the first request. (Dkt. No. 22, at 14.)

### 2. Whether, in the Alternative, Plaintiff Has Failed to State a Retaliation Claim Against Anderson Arising Under Either the Rehabilitation Act or the ADA

After carefully considering the matter, the Court answers this question in the affirmative, for all the reasons offered in Defendant Anderson's memoranda of law. *See, supra,* Parts I.B.1. and I.B.3. of this Decision and Order. The Court adds only the following analysis.

The Complaint alleges that "Defendants had knowledge that Plaintiff lodged . . . complaints." (Dkt. No. 1, at ¶¶ 45, 47 [Plf.'s Complaint].) According to Paragraphs 45, 47, 51, 61 and 62 of the Complaint, the referenced "complaints" were those lodged with (1) "the State Education Department," (2) "the Office of Mental Retardation and Developmental Disabilities," (3) "the Commission on Quality of Care & Advocacy for Persons with Disabilities," and (4) "Defendants" themselves. (*Id*. at ¶¶ 45, 47, 51, 61, 62, 79, 91.) However, several omissions from Plaintiff's otherwise-detailed Complaint appear conspicuous, casting doubt on the allegations' plausibility. In particular, because Paragraphs 45 and 47 do not mention restraints *against Plaintiff*, the Court has trouble finding that they plausibly suggest the filing of complaints by Plaintiff with the State Education Department. (*Id*. at ¶¶ 45, 47.) Moreover, because Paragraph 51 does not mention documents *regarding Plaintiff*, the Court has trouble finding that it plausibly suggests the filing of a complaint by Plaintiff, or any communication by the Office of Office of Mental Retardation to Defendant Anderson regarding Plaintiff. Furthermore, while Paragraphs 61 and 62 mention a "fervernt[] disagree[ment]" with Defendant Anderson's conduct, the Court has trouble finding that they plausibly suggest that the Commission communicated that "fervernt[] disagree[ment]" directly to Defendant Anderson. Finally, because Paragraphs 79 and 91 allege that Plaintiff filed "many complaints" or "various

complaints" with "Defendants," the Court has trouble finding that they plausibly suggest what, if any, complaint Plaintiff filed specifically with Defendant Anderson (much less when Plaintiff did so). For all these reasons, the Court has trouble finding that the Complaint alleges facts plausibly suggesting that Defendant Anderson had knowledge of Plaintiff's alleged complaints before it took any alleged adverse action.

In any event, regarding that alleged adverse action, the Complaint alleges that, "after F.M.'s parents reported [an incident of alleged assault]" during the days following May 6, 2009, Defendant Anderson "deliberately delayed and obfuscated their follow-up investigation" by (a) not responding to the parents' "multiple emails," (b) "waiting five days" to report the incident to the State Police," (c) failing to "interview F.M.'s speech therapist or any of the aides working in F.M.'s classrooms on that day," and (d) at some point in time, "determin[ing] that the allegations against their staff were 'disconfirmed.'" (Dkt. No. 1, at ¶¶ 7, 58, 59, 60.) At its core, this theory of adverse action is based on a dissatisfaction with Defendant Anderson's determination of the parents' allegations of assault, and conclusory (if not speculative) allegations as to why the determination was in error. There are no factual allegations plausibly suggesting that Defendant Anderson read F.M.'s parents' emails promptly after they were sent, that its referral to the State Police was untimely, or that its deference to the State Police's investigation was inappropriate. *Cf. Pape v. Bd. of Educ. of Wappingers Cent. Sch. Dist.*, 07-CV-8828, 2013 WL 3929630, at *13 (S.D.N.Y. July 30, 2013) ("Plaintiffs present no evidence to demonstrate why what seems like a reasonable delay in convening the CSE meeting could constitute an adverse decision or course of action . . . .") (internal quotation marks and citations omitted).

### 3. Whether Plaintiff Has Failed to State a Substantive or Procedural Due Process Claim Against Anderson

After carefully considering the matter, the Court answers this question in the affirmative, for all the reasons offered in Defendant Anderson's memoranda of law. *See, supra,* Parts I.B.1. and I.B.3. of this Decision and Order. The Court adds only the following analysis.

Because Plaintiff does not respond to Defendant Anderson's substantive-due-process arguments in his response memorandum of law, the Court does not construe Plaintiff's Complaint as attempting to assert such a claim. The Court notes that the Complaint, which was drafted by an attorney, does not mention the words "substantive due process or "arbitrary" (and mentions the word "outrageous" only in the context of Plaintiff's claim of intentional infliction of emotional distress). (*See generally* Dkt. No. 1 [Plf.'s Compl.].)

Even if the Court were to construe Plaintiff's Complaint as attempting to assert a substantive-due-process claim, the Court would find that Plaintiff has failed to state such a claim because of the lightened burden that Defendant Anderson has satisfied in arguing that the Complaint fails to allege facts plausibly suggesting that Defendant Anderson's conduct was so outrageously arbitrary as to be a gross abuse of governmental authority.

Moreover, the Court finds that the Complaint does not allege facts plausibly suggesting that Defendant Anderson was a state actor. In so doing, the Court relies on the fact that, in his opposition memorandum of law, Plaintiff effectively conceded the error in the theory that Defendant Anderson was a state actor because it "receiv[ed] federal financial assistance." (*Compare* Dkt. No. 1, at ¶ 14 [Plf.'s Compl.] *with* Dkt. No. 23 at 10 [attaching page "7" of Plf.'s Opp'n Memo. of Law].) In addition, in rejecting the argument that Defendant Anderson was a state actor because it implemented an IEP, complied with state rules, and acted under the

authority of a state office, the Court relies on an analogous case from the Southern District of New York and finds guidance in a clearly distinguishable case from the Eastern District of New York. *See Hamlin v. City of Peekskill Bd. of Educ.*, 377 F. Supp.2d 379, 385-90 (S.D.N.Y. 2005) (finding that Green Chimneys, a private school that provides educational services to children with special educational and emotional needs, was not a state actor, based on *Rendell-Baker v. Kohn*, 457 U.S. 830 [1982], and a careful analysis of the exclusive-public-function doctrine, the entwined-with-the-government doctrine, the government-coercion doctrine, and the willing-engagement doctrine); *cf. Scaggs v. New York Dept. of Educ.*, 06-CV-0799, 2007 WL 1456221, at *12-13 (E.D.N.Y. May 16, 2007) (finding Edison Schools, a private entity, was a state actor because it was "charged with oversight and management functions with regard to Riverhead [Charter School]").

For all of these reasons, the Court dismisses Plaintiff's federal claims against Defendant Anderson. Plaintiff's perfunctory request for "an opportunity to cure any pleading deficiencies" (Dkt. No. 23, at 12 [attaching page "9" of Plf.'s Opp'n Memo. of Law]) is denied as unsupported by an attached proposed amended pleading (as required by Local Rule 7.1[a][4] of the Local Rules of Practice for this Court), and in the alternative as futile, given the substantive nature of the defects in his federal claims.

### 4.    Plaintiff's State-Law Claims Against Anderson

Where a district court has dismissed all claims over which it has original jurisdiction, the court may decline to exercise supplemental jurisdiction over state law claims. 28 U.S.C. § 1637(c)(3); *Hurley v. Cnty. of Yates*, 04-CV-6561, 2005 WL 2133603, at *3 (W.D.N.Y. Aug.31, 2005), *accord, Middleton v. Falk*, 06-CV-1461, 2009 WL 666397, at *9 (N.D.N.Y. Mar.10,

2009) (Suddaby, J. adopting Report-Recommendation of Homer, M.J.). The decision is a discretionary one, and its justification "lies in considerations of judicial economy, convenience and fairness to litigants; if . . . not present a federal court should hesitate to exercise jurisdiction over state claims." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966); *see also Valencia ex. rel. Franco v. Lee*, 316 F.3d 299, 305 (2d Cir. 2003) ("In the usual case in which all federal law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine-judicial economy, convenience, fairness, and comity-will point toward declining to exercise jurisdiction over the remaining state-law claims.") (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 [1988] ).  Here, all of the factors to be considered weigh in favor of a decision to decline to exercise supplemental jurisdiction over Plaintiff's state-law claims. For these reasons, Plaintiff's state-law claims are dismissed without prejudice to refiling in New York State Court within the time period established by 28 U.S.C. § 1637(d).

**B.     Defendant Taconic Hills' Motion to Dismiss**

Plaintiff has asserted against Defendant Taconic Hills the same eight federal claims as he has asserted against Defendant Anderson.  *See, supra,* Parts I.A. and III.A. of this Decision and Order.

As indicated above in Part I.C. of this Decision and Order, Defendant Taconic Hills' motion presents four general issues with regard to those eight federal claims: (1) whether Plaintiff's claims against Defendant Taconic Hills arising under the Rehabilitation Act, ADA and IDEA and based on events occurring before January 10, 2010, are barred by the applicable statute of limitations; (2) whether, in the alternative, Plaintiff's claims against Defendant Taconic

Hills arising under the Rehabilitation Act or IDEA and based on events occurring before the service of his "Demand for a Due Process Hearing" on July 2, 2009, are barred by the Consent Decree of September 29, 2009; (3) whether Plaintiff's claims against Defendant Taconic Hills arising under the Rehabilitation Act, ADA and IDEA and based on events occurring between January 10, 2010, and June 30, 2010, are barred the doctrines of collateral estoppel and/or *res judicata*, due to the IHO's decision of January 31, 2011, and the SRO's decision of April 29, 2011; and (4) whether Plaintiff has failed to state a due process claim against Defendant Taconic Hills.

1.    **Whether Plaintiff's Claims Against Taconic Hills Arising Under the Rehabilitation Act, ADA and IDEA and Based on Events Occurring Before January 10, 2010, Are Barred by the Applicable Statute of Limitations**

After carefully considering the matter, the Court answers this question in the affirmative for all the reasons offered in Defendant Taconic Hills' memoranda of law. *See, supra,* Parts I.C.1. and I.C.3. this Decision and Order. The Court adds only the following analysis.

The statute of limitations has expired with regard to Plaintiff's claims arising from events occurring before January 10, 2010, for the same reasons as stated above in Part III.A.1. of this Decision and Order. Moreover, the statute of limitations has not expired with regard to Plaintiff's claims arising from events occurring after January 10, 2010, for the same reasons as stated above in Part III.A.1. of this Decision and Order.

2.    **Whether, in the Alternative, Plaintiff's Claims Against Taconic Hills Arising Under the Rehabilitation Act or IDEA and Based on Events Occurring Before July 2, 2009, Are Barred by the Consent Decree of September 29, 2009**

After carefully considering the matter, the Court answers this question in the affirmative for all the reasons offered in Defendant Taconic Hills' memoranda of law. *See, supra,* Parts

I.C.1. and I.C.3. this Decision and Order.  The Court adds only the following analysis.

The Consent Decree provided as follows, in pertinent part.  Defendant Taconic Hills would "develop an I.E.P. that includes," in pertinent part, "[t]he training and supports necessary for staff to implement the Student's IEP."  (Dkt. No. 17, Attach. 7, at 4, ¶ 7 [Consent Decree].)  The IEP was to include, in pertinent part, a "behavior intervention plan," which prohibited "any physical interventions or restraints, including but not limited to basket holds and prone restraints."  (*Id*. at 4-5, ¶¶ 7-8.)  If, "[i]n the event of an emergency . . . it becomes necessary to use a physical restraint or intervention to prevent harm to self or others, the Parents shall be notified immediately by phone on the same day of the emergency intervention . . . ."  (*Id*. at 6, ¶ 10.)  "Should . . . the Parents . . . assert that the program or placement is unsafe, this issue can be submitted to an impartial hearing officer . . . ."  (*Id*. at 6, ¶ 12.)  "As long as the District implements the terms of this agreement, the Parties agree that all claims under the IDEA and Section 504 leading up to the hearing requested by the Parents on July 2, 2009, involving the District are resolved . . . ."  (*Id*. at 7, ¶ 17.)

Plaintiff acknowledges that Defendant Taconic Hills developed an IEP for F.M. in January of 2010.  (Dkt. No. 17, Attach. 8, at 1 [Due Process Complaint of Apr. 22, 2010].)  Plaintiff also appears to acknowledge that the IEP included a behavior intervention plan (which prohibited any physical interventions or restraints, including but not limited to basket holds and prone restraints).  (*Id*. at 4.)  However, Plaintiff argues that the IEP failed to include the "training and supports" necessary for staff to implement the IEP.  (*Id*. at 2, 4.)  Plaintiff also argues that Defendant Taconic Hills failed to  notify the parents immediately by phone on the same day of the emergency intervention on March 9, 2010.  (*Id*. at 4.)

Apart from a circular argument (that there was inadequate training and supports because an inappropriate physical restraint was used), Plaintiff supports his inadequate-training-and-supports argument on the fact that the employee who allegedly used the inappropriate physical restraint testified that she had no idea of the preclusion of such aggression under the Consent Decree.  Setting aside the fact that it was not "the aggressor" (i.e., Christina Rogers) but F.M.'s "teacher" (i.e., Nancy Haley) who testified that she had never "seen" the Consent Decree (Dkt. No. 17, Attach. 9, at 3, 6 [Amended Findings of Fact]), whether or not either employee had seen the Consent Decree hardly means that the IEP lacked the training and supports necessary for staff to implement the IEP.  Indeed, the very document relied on by Plaintiff states that "the aggressor" participated in three days of intensive "group training" (with, *inter alia*, F.M.'s parents) approximately a month before F.M. began participating in the program.  (*Id*. at 6.)

With regard to Plaintiff's inadequate-notice argument, for the sake of brevity the Court will not linger on the fact that the Consent Decree does not state by whom the notice shall be given (i.e., the District or the Carbone Clinic).  More important is the fact that the very document relied on by Plaintiff states that "the principal contacted the parent at 11:25 a.m. . . ." (*Id*. at 4.) Moreover, it appears that, "[b]y 4:06 pm [that same day], the Parents had filed a criminal complaint . . . against [the alleged aggressor]," indicating they possessed notice of the intervention that same day.  (Dkt. No. 17, Attach. 9, at 3, 6 [Amended Findings of Fact].) In any event, it is difficult for the Court to conclude that such a failure to implement this isolated term of the Consent Decree resurrects all of the claims leading up to the hearing requested by the Parents on July 2, 2009 (as opposed to only those claims regarding notice of an emergency intervention).

> **3.** **Whether Plaintiff's Claims Against Taconic Hills Arising Under the Rehabilitation Act, ADA and IDEA and Based on Events Occurring Between January 10, 2010, and June 30, 2010, Are Barred by the Doctrines of Collateral Estoppel and/or *Res Judicata***

After carefully considering the matter, the Court answers this question in the affirmative for all the reasons offered in Defendant Taconic Hills' memoranda of law. *See, supra,* Parts I.C.1. and I.C.3. this Decision and Order. The Court adds only the following analysis.

On January 31, 2011, the IHO issued a 77-page decision with regard to any claims based on events occurring between January 28, 2010, through June 30, 2010. (Dkt. No. 17, Attach. 9.) In the decision, the IHO found that, during the period at issue before her (January 28, 2010, through June 30, 2010), the District failed to offer F.M. a free appropriate public education between March 9, 2010 and June 30, 2010 due to the unavailability of the special education teacher assigned to F.M.'s program on and after March 9, 2010. (*Id*. at 48-62.) However, the IHO declined to award F.M. compensatory services, because she found, *inter alia*, that "the Parents' intrusive behavior, their hostile and accusatory approach to personnel as well as their preference for keeping F.M. home without services . . . contributed synergistically to the District's inability to provide FAPE" and that "[ultimately, the denial of FAPE was a product of the Parents' actions." (*Id*. at 60, 62.) As a result, the IHO found, *inter alia*, that "[t]he District shall have no liability for the absence of FAPE from January 28, 2010 through the end of the 2010 school year." (*Id*. at 73.)

On April 29, 2011, the SRO decided an appeal from that decision. (Dkt. No. 17, Attach. 10.) In the decision, the SRO granted the Parents' appeal only to the extent of awarding F.M. "'one-for-one' compensatory additional services in the form of special education teacher services from March 10, 2010 through June 10, 2010, when the district had a new BCBA/special

education teacher in place and was ready to resume the student's IEP services." (*Id*. at 29

[attaching page "27" of SRO's decision].)  Otherwise, the SRO denied the appeal.  The reason

for this denial was that the SRO found, *inter alia*, as follows:

> [T]he district promptly and professionally responded to the March 9, 2010
> incident, and thereafter, consistently offered to provide the student with
> the services of a 1:1 aide, as well as speech-language therapy, OT, and PT,
> pursuant to the student's January 27, 2010 IEP from March 10, 2010
> through June 30, 2010 . . . .  However, the efforts extended by the district
> continually met with resistance, inaction, altered demands by the parents,
> and the parents' continued refusal to accept any educational services for
> the student from March 10, 2010 through June 30, 2010.  While the
> district, with the support of Dr. Carbone, continued to make earnest efforts
> under challenging circumstances to accommodate the parents' concerns
> and to provide at least some of the student's special education services, the
> parents were prepared to accept nothing short of flawless implementation
> of the student's entire IEP . . . .  While I can appreciate the parents' sincere
> concerns for the safety of their child in a school environment, based on the
> evidence in the hearing record, I find that the parents' conduct in this case
> was unreasonable and, in part, contributed to the failure of the delivery of
> a portion of the special education services from March 10, 2010 through
> June 30, 2010.

(*Id*. at 28-29 [attaching pages "26" and "27" of SRO's decision].)

Plaintiff had four months from the issuance of the SRO's decision (i.e., until August 27,

2011) to commence an action in this court to "review[]" the SRO's decision.[7]  However, Plaintiff

did not do so, waiting until January 10, 2013 (or another 505 days) to file this action.  (Dkt. No.

1.)

---

[7]     *See* 20 U.S.C. § 1415(i)(2)(B) ("The party bringing the action shall have 90 days
from the date of the decision of the hearing officer to bring such an action, or, if the State has an
explicit time limitation for bringing such action under this subchapter, in such time as the State
law allows."); N.Y. Educ. Law § 4404(3)(a) ("Any final determination or order of a state review
officer rendered pursuant to subdivision two of this section may only be reviewed in a
proceeding brought in the supreme court pursuant to article four of the civil practice law and
rules, and paragraph b of this subdivision, or in United States district court. Any such proceeding
shall be commenced within four months after the determination to be reviewed becomes final
and binding on the parties.").

As a result, the SRO's decision is final, and "cannot be relitigated here." *Capital City Public Charter Sch. v. Gambale*, 13-CV-0253, 2014 WL 1100366, at *2, n.1 (D.D.C. March 20, 2014) ("The HOD . . . represents a final judgment of an administrative body that acted in a judicial capacity. The findings of the Hearing Officer cannot be relitigated here.").

Plaintiff's argument that preclusive effect may never be given to an SRO decision that is challenged by a federal civil action appears to overlook the impact of the four-month deadline for filing challenges to such SRO decisions. Granted, if the federal action is filed within the four-month deadline, preclusive effect is not given to the SRO decision. *See, e.g., M.S. v. N.Y.C. Dept. of Educ.*, 12-CV-3533, 2013 WL 7819319, at *1 (E.D.N.Y. Nov. 5, 2013) (affording mere deferential effect to SRO decision issued on April 18, 2012, in federal court action filed on July 17, 2012, within four-month deadline imposed by N.Y. Educ. Law § 4404[3][a]); *B.J.S. v. State Educ. Dept.*, 07-CV-0456, 2011 WL 3651051, at *1, 4 (W.D.N.Y. Aug. 18, 2011) (affording mere deferential effect to SRO decision issued on March 17, 2007, in federal court action filed on July 13, 2007, within four-month deadline imposed by N.Y. Educ. Law § 4404[3][a]); *C.B. v. Pittsford Cent. Sch. Dist.,* 08-CV-6462, 2009 WL 2991564, at *1 (W.D.N.Y. Sept. 15, 2009) (not affording preclusive effect to SRO decision issued on July 23, 2008, in federal court action filed on October 10, 2008, within four-month deadline imposed by N.Y. Educ. Law § 4404[3][a]); *Petrina W. v. City of Chicago Pub. Sch. Dist.*, 08-CV-3183, 2009 WL 5066651, at *1-2 (N.D. Ill. Dec. 10, 2009) (not affording preclusive effect to Hearing Officer's decision issued on February 4, 2008, in federal court action filed on June 2, 2008, within 120-day deadline imposed by 105 ILCS 5/14-8.02a[i]).

However, if the federal action is not filed within the four-month deadline, courts generally appear to give preclusive effect to the SRO decision (barring a challenge to that decision). *See*, *e.g.*, *Manchester Sch. Dist. v. Crisman*, 306 F.3d 1, 14 (1ˢᵗ Cir. 2002) (holding that school district was barred under the doctrines of collateral estoppel and *res judicata* from subsequently challenging a state Department of Educations's determination, which was made a decade earlier); *Gambale*, 2014 WL 1100366, at *2, n.1 ("The Court takes the facts from the Hearing Officer Decision (HOD), which was not appealed by the Parent [within the deadline imposed by] 20 U.S.C. §1415(i)(2)(B) . . . . The HOD, therefore, represents a final judgment of an administrative body that acted in a judicial capacity. The findings of the Hearing Officer cannot be relitigated here."); *District of Columbia v. Barrie*, 741 F. Supp.2d 250, 267 (D.D.C. 2010) ("While Defendants were entitled to bring an action in either state or federal court challenging the December HOD pursuant to 20 U.S.C. § 1415(i)( 2), they did not do so and the Court is without legal authority to vacate that decision in the present action.").[8]

Finally, under the particular circumstances of this case, the Court agrees with Defendant Taconic Hills that the SRO's specific and necessary findings (e.g., regarding Taconic Hills' "prompt[] and professional[] respon[se] to the March 9, 2010 incident," "consistent[] offer[ing]" of services and therapy to F.M., and "earnest efforts" to provide special educational services to

---

[8]    It is worth noting that, even where a challenge to an SRO decision may be barred due to the failure to comply with above-described four-month deadline, a federal court action under the IDEA may survive to the extent it does not challenge the SRO decision (and it complies with the governing two-year or three-year statute of limitations). *See, e.g., Butler v. South Glens Falls Cent. Sch. Dist.*, 106 F. Supp.2d 414, 418 (N.D.N.Y. 2000) ("The Second Circuit has determined that an action under § 1415 of the IDEA appealing an administrative proceeding is analogous to an Article 78 proceeding and therefore, the four month statute of limitations applicable to Article 78 proceedings applies to such actions. . . . However, a three year statute of limitations applies where the complaint alleges that the defendant failed to comply with the procedural safeguards provided in the IDEA.").

F.M., and the parents' own "resistance, inaction, altered demands," "continued refusal[s]," and "unreasonable" conduct, etc.) collateral estop Plaintiff from establishing a denial of a FAPE by Defendant Taconic Hills under the IDEA during the relevant time period, discriminatory intent by Defendant Taconic Hills under Rehabilitation Act or ADA during the relevant time period, and retaliatory intent by Defendant Taconic Hills under Rehabilitation Act or ADA during the relevant time period.

### 4. Whether Plaintiff Has Failed to State a Due Process Claim Against Taconic Hills

After carefully considering the matter, the Court answers this question in the affirmative for all the reasons offered in Defendant Taconic Hills' memoranda of law. *See, supra,* Parts I.C.1. and I.C.3. this Decision and Order. The Court adds only the following analysis.

In support of the argument that employees of both Defendants engaged in wrongful aversive intervention, Plaintiff's opposition memorandum of law cites 15 paragraphs of Plaintiff's Complaint (i.e., Paragraphs 36-44, 46, 48, 55-57 and 66). (Dkt. No. 22, at 23 [attaching page "18" of Plf.'s Opp'n Memo. of Law].) However, only two of those paragraphs (i.e., Paragraphs 38 and 66) regard Defendant Taconic Hills. (Dkt. No. 1, at ¶¶ 36-44, 46, 48, 55-57 and 66 [Plf.'s Compl.].) Furthermore, neither Paragraph 38 nor Paragraph 66 alleges facts plausibly suggesting that Defendant Taconic Hills engaged in wrongful aversive intervention. (*Id*. at ¶¶ 38, 66.)

Specifically, Paragraph 38 alleges that both Defendants "denied, against the Regulations of the Commissioner of Education, a request by F.M.'s parents to conduct an independent functional behavior assessment." (Dkt. No. 1, at ¶ 38 [Plf.'s Compl.].) Setting aside the fact that it was Defendant Anderson that allegedly created the Behavioral Support Plan (*id*. at ¶ 36), it is

unclear how Defendant Taconic Hills' alleged denial of Plaintiff's request, at some unidentified point in time, caused future wrongful aversive interventions, which were allegedly employed by Defendant Anderson (*id*. at ¶ 41).

Paragraph 66 alleges as follows, in pertinent part: "F.M.'s parents . . . had an independent evaluation of F.M. conducted to generate an up-to-date IEP, and upon its completion, had F.M. participate in a school-based program at the Carbone Clinic for 22 days. At the end of these 22 days, F.M. came home with a scratch on his neck, the second such injury observed by his parents." (*Id*. at ¶ 66.) The significance of the fact that the program was "school-based" is diminished somewhat by the fact that the injury was caused at the Carbone Clinic, and the fact that the injury consisted of a "scratch" (and, arguably, the fact that the parents choose to have F.M. participate in the program).

In an attempt to further involve Defendant Taconic Hills in the infliction of the injury, Plaintiff argues that "the aggressor" who inflicted the injury (which was allegedly discovered on March 9 or 10, 2010) testified that she had no idea of the preclusion of such aggression under the Consent Decree. However, in support of that argument, Plaintiff cites to page 6 of an exhibit to an attorney affidavit. (Dkt. No. 22, at 23 [attaching page "18" of Plf.'s Opp'n Memo. of Law].) For the sake of brevity, the Court will assume that the exhibit (which contains 77 pages of Amended Findings of Fact by an IHO) may be considered on this motion to dismiss. *See, supra,* Part II of this Decision and Order (setting forth legal standard). In any event, the document also states that (1) "the aggressor" participated in three days of intensive "group training" (with, *inter alia*, F.M.'s parents) approximately a month before F.M. began participating in the program, (2) F.M. arrived at the Clinic with a "red mark" on his neck the morning *before* the injury was

allegedly caused by "the aggressor," and (3) it was not "the aggressor" (i.e., Christina Rogers) but F.M.'s "teacher" (i.e., Nancy Haley) who testified that she had never "seen" the Consent Decree. (Dkt. No. 17, Attach. 9, at 3, 6 [Amended Findings of Fact].)[9]

Finally, and perhaps more importantly, this sole alleged violation of the Consent Decree (which is not alleged to have been committed by a person with final policymaking authority) does not establish a policy, practice or custom on behalf of Defendant Taconic Hills. *See City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823-24 (1985) ("Proof of a single incident of unconstitutional activity is not sufficient to impose [municipal liability]."); *Dwares v. City of New York*, 985 F.2d 94, 100 (2d Cir.1993) ("[T]he simple recitation that there was a failure to train municipal employees does not suffice to allege that a municipal custom or policy caused the plaintiff's injury. A single incident alleged in a complaint, especially if it involved only actors below the policymaking level, generally will not suffice to raise an inference of the existence of a custom or policy."); *Ricciuti v. N.Y. City Transit Auth.*, 941 F.2d 119, 123 (2d Cir.1991) ("[A] single incident alleged in a complaint, especially if it involved only actors below the policy-making level, does not suffice to show a municipal policy."); *Sarus v. Rotundo*, 831 F.2d 397, 402 (2d Cir.1987) ("[A]bsent more evidence of supervisory indifference . . . a policy may not ordinarily be inferred from a single incident of illegality."); *Fiacco v. City of Rensselaer, N.Y.*, 783 F.2d 319, 327 (2d Cir.1986) ("Since the existence of a policy of nonsupervision amounting to deliberate indifference to constitutional rights cannot be established by inference

---

[9]    The Court notes that, to the extent the provision of the Consent Decree alleged to have been violated was expressly redundant of existing "law and regulation" (*see, e.g.,* Dkt. No. 17, Attach. 7, at 5, ¶ 8 [Consent Order]), that provision appears to be of somewhat diminished significance (for purposes of the involvement of Defendant Taconic Hills). *Cf. Goodson v. Artus*, 09-CV-0494, 2012 WL 1037444, at *5 (N.D.N.Y. March 27, 2012) (finding that an injunction requesting "an Order prohibiting Defendants from doing what the law already prohibits them from doing" appears moot).

solely from evidence of the occurrence of the incident in question, . . . a plaintiff cannot prevail on a § 1983 claim against a municipality without introducing other evidence."); *Turpin v. Mailet*, 619 F.2d 196, 202 (2d Cir.1980) ("We agree that, absent more evidence of supervisory indifference, such as acquiescence in a prior pattern of conduct, a policy could not ordinarily be inferred from a single incident of illegality. . . .").

For all of these reasons, the Court dismisses Plaintiff's federal claims against Defendant Taconic Hills. Again, Plaintiff's perfunctory request for "an opportunity to cure any pleading deficiencies" (Dkt. No. 22, at 27 [attaching page "22" of Plf.'s Opp'n Memo. of Law]) is denied as unsupported by an attached proposed amended pleading (as required by Local Rule 7.1[a][4] of the Local Rules of Practice for this Court), and in the alternative as futile, given the substantive nature of the defects in his federal claims.

### 5. Plaintiff's State-Law Claims Against Taconic Hills

For the same reason that the Court dismisses Plaintiff's state-law claims against Defendant Anderson, the Court dismisses Plaintiff's state law-claims against Defendant Taconic Hills. *See, supra,* Part III.A.4. of this Decision and Order.

**ACCORDINGLY**, it is

**ORDERED** that Defendant Anderson Center for Autism's motion to dismiss for failure to state a claim (Dkt. No. 15) is **GRANTED**; and it is further

**ORDERED** that Defendant Taconic Hills Central School District's motion to dismiss for failure to state a claim (Dkt. No. 17) is **GRANTED**.

Dated: September 10, 2014
Syracuse, New York

Hon. Glenn T. Suddaby
U.S. District Judge